UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
JAMES MELENDEZ,

                      Plaintiff,                      **REPORT AND RECOMMENDATION**

    -against-

                                                      05 Civ. 595 (SCR) (GAY)

ENTERGY NUCLEAR NORTHEAST,

                      Defendants.
--------------------------------------------------------X

TO THE HONORABLE STEPHEN C. ROBINSON, United States District Judge:

Plaintiff James Melendez, proceeding *pro se*, alleges that his former employer, defendant Entergy Nuclear Northeast ("Entergy"), discriminated against him because of his disability in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*. Presently before this Court are the parties' cross-motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("FRCP"). For the reasons set forth below, I respectfully recommend that defendant's motion should be granted and plaintiff's complaint dismissed.[1]

**I. BACKGROUND**

The following undisputed facts are gleaned from the parties' statements pursuant to Local Civil Rule 56.1 of the United States District Courts for the Southern and Eastern

---

[1] In his motion papers, plaintiff asserts–for the first time–claims for violations of the ADEA and the Equal Pay Act. I respectfully recommend that said claims should be disregarded. Plaintiff's allegations are vague and conclusory. More importantly, defendant would be greatly prejudiced should plaintiff be allowed to assert said claims at this late stage of litigation.

Districts of New York, from the pleadings and from affidavits, affirmations and exhibits submitted by the parties in support of their contentions.

Entergy owns and operates several nuclear power plants located throughout the northeastern United States, including the two Indian Point plants in Buchanan, New York. Plaintiff began his employment with Entergy in November 2000, in the position of IT consultant at Indian Point 3. Subsequent to Entergy's acquisition of Indian Point 2 in September 2001, plaintiff's responsibilities included the oversight and management of backup tapes for Indian Point 2 and Indian Point 3.

During a planned refueling outage in November 2002, it was discovered that plaintiff had not performed all of the required backups and the backup tapes that he had prepared contained numerous errors. On December 16, 2002, plaintiff was counseled by his supervisors ("Sparky" Soudah and Fehmi Aydin) regarding a number of performance issues, including the lack of backup tapes. Plaintiff was advised that his employment would be terminated if he did not improve his performance.

In February 2003, plaintiff was provided with his annual Performance Planning and Review Evaluation for the calendar year 2002, in which his overall rating was "Needs Improvement." In March 2003, plaintiff was transferred to Entergy's administrative offices in White Plains, New York where his responsibility for performing backups continued. Throughout April 2003, plaintiff was counseled numerous times about his continued poor performance. On May 7, 2003, Soudah met with plaintiff to discuss a Performance Improvement Plan, at which time plaintiff was told that he needed to dramatically improve his performance in order to maintain his employment. Plaintiff received additional counseling regarding his performance in May 2003. On

2

June 20, 2003, Soudah and plaintiff met once again to address plaintiff's work performance.

On July 16, 2003, the computer system at the White Plains office crashed. When IT team members sought to re-boot the computers, the most recent backup tapes that could be located were from April 2003. Plaintiff, however, was supposed to have been doing backups throughout the months of April, May, June and July. On July 22, 2003, plaintiff's employment was terminated.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FRCP 56(c). Specifically, the party seeking summary judgment has the burden of demonstrating that no genuine issue respecting any material fact exists. See LaFond v. General Physics Servs. Corp., 50 F.3d 165, 171 (2d Cir. 1995). If the moving party meets its burden, the burden shifts to the opposing party to come forward with "specific facts showing that there is a genuine issue for trial." FRCP 56(e). Where a plaintiff fails to establish an essential element of her claim, "there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (internal quotations and citations omitted).

When deciding a summary judgment motion, the court must resolve all ambiguities and draw all factual inferences in favor of the party opposing the motion.

See McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999).  The question is whether, in light of the evidence, a rational jury could find in favor of the nonmoving party.  See Gallo v. Prudential Residential Servs., Ltd. Partnership, 22 F.3d 1219, 1224 (2d Cir. 1994).  Summary judgment must be denied, therefore, if the court finds "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  Anderson v. Liberty Lobby, 477 U.S. 242, 250 (1986).

Caution should be exercised in addressing summary judgment motions in discrimination cases where intent and state of mind are at issue because "careful scrutiny of the factual allegations may reveal circumstantial evidence to support the required inference of discrimination."  See Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000) (citations omitted).  Nonetheless, the Second Circuit has expressly "remind[ed the] district courts that the impression that summary judgment is unavailable to defendants in discrimination cases is unsupportable."  See Weinstock v.Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quotation and citation omitted).  On the one hand, mere conclusory allegations of discrimination will not defeat a summary judgment motion; a plaintiff in a discrimination case must proffer "concrete particulars" to substantiate his claim.  See Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985).  On the other hand, courts must be aware of the fact that "discrimination will seldom manifest itself overtly."  Bickerstaff v. Vassar Coll., 196 F.3d 435, 448 (2d Cir. 1999).  Courts must therefore "carefully distinguish between evidence that allows for a reasonable inference of discrimination and evidence that gives rise to mere speculation and conjecture."  Id.  Thus, the ultimate question in deciding a summary judgment motion in

a discrimination case "is whether the evidence can reasonably and logically give rise to an inference of discrimination under all of the circumstances."  Id.

### III.  SUMMARY JUDGMENT ANALYSIS:  ADA

Courts in this circuit analyze claims brought under the ADA pursuant to the three-step burden shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973).  See Greenway v. Buffalo Hilton Hotel, 143 F.3d 47, 52 (2d Cir. 1998).  Under the McDonnell-Douglas framework, plaintiff "must initially come forward with facts sufficient to establish a prima facie case that his discharge was effected under circumstances giving rise to an inference of discrimination."  Greenway, 143 F.3d at 52.  Plaintiff's burden of establishing a prima facie case is "minimal."  See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993).

If the plaintiff establishes his prima facie case, a presumption that the employer unlawfully discriminated against the employee is raised and the burden of production then shifts to the employer "to articulate some legitimate nondiscriminatory reason" for its actions.  See Fisher v. Vassar College, 114 F.3d 1332, 1335-36 (2d Cir. 1997) (en banc).  "The employer's explanation must be clear and specific, so that the employee has an opportunity to demonstrate pretext."  Hill v. Taconic Dev. Disabilities Serv. Office, 181 F. Supp.2d 303, 317 (S.D.N.Y. 2002).

"Should the defendant carry this burden, the plaintiff must then demonstrate that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination."  Id.  See St. Mary's Honor Ctr., 509 U.S. at 507-08.  In determining whether the plaintiff has met this burden, the court must take a "case-by-case" approach that weighs "'the strength of the plaintiff's prima facie case, the

5

probative value of the proof that the employer's explanation is false, and any other evidence that supports [or undermines] the employer's case.'" James v. New York Racing Ass'n, 233 F.3d 149, 156 (2d Cir. 2000) (quoting Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 148-49 (2000)).  In other words, although the burden of production shifts, "the ultimate burden rests with the plaintiff to offer evidence sufficient to support a reasonable inference that prohibited discrimination occurred."  Woodman v. WWOR-TV, Inc., 411 F.3d 69, 76 (2d Cir. 2005) (quotation and citation omitted).

**IV.  PLAINTIFF'S ADA CLAIMS**

In order to establish a prima facie case of employment discrimination under the ADA, plaintiff must show that: (1) his employer is subject to the ADA; (2) he suffers from a disability within the meaning of the ADA; (3) he could perform the essential functions of his job with or without reasonable accommodation; and (4) he was fired because of his disability.  See Reeves v. Johnson Controls World Servs., Inc., 140 F.3d 144, 149-50 (2d Cir. 1998).   In order to recover on his failure to accommodate claim under the ADA, plaintiff must demonstrate that: (1) he is an individual with a disability within the meaning of the ADA; (2) his employer is covered by the ADA and had notice of his disability; (3) he could perform the essential functions of the position with reasonable accommodations; and (4) his employer refused to provide such accommodations.  See Riddle v. Liz Claiborne, Inc., No. 00 Civ. 1374, 2006 WL 3057289, at *6 (S.D.N.Y. Oct. 27, 2006).  Here, Entergy argues, *inter alia*, that plaintiff has failed to show that he is an individual with a disability within the meaning of the ADA and, therefore, has not demonstrated a prima facie case of either discrimination or failure to accommodate.

6

A.  Definition of Disability under the ADA

Plaintiff alleges that he suffers from partial severe hearing loss, depression and Attention Deficit Hyperactivity Disorder ("ADHD"), and claims that Entergy terminated his employment because of his disabilities.  The ADA prohibits covered employers from discriminating  against persons with disabilities in the terms, conditions and privileges of employment.  See 42 U.S.C. § 12112(a).  "A person is considered disabled under the ADA only if he has, or is regarded as having, a physical or mental impairment that *substantially* limits a major life activity."  Bosket v. Long Island R.R., No. CV 00-7352-RJDJMA, 2004 WL 1305746, at *3 (E.D.N.Y. June 4, 2004) (emphasis in original).  The regulations promulgated by the EEOC under the ADA define "major life activities" as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."  See 29. C.F.R.  § 1630.2(i).  "As EEOC regulations recognize that this list is not exhaustive, sitting, standing, lifting, reaching, thinking, concentrating, and interacting with others are also considered major life activities."  DeMar v. Car-Freshner Corp., 49 F. Supp.2d 84, 90 (N.D.N.Y. 1999).  Here, construing plaintiff's submissions liberally, his claim is premised on his ability to hear, concentrate, learn and work.  Defendant contends, however, that plaintiff fails to demonstrate that his alleged impairments substantially limited either his ability to hear, concentrate, learn or work.

B. Substantial Limitation

"Whether a plaintiff's impairment substantially limits a major life activity is a fact-specific inquiry."  Riddle, 2006 WL 3057289, at *6 (internal quotation omitted).  "A major life activity is substantially limited when an individual cannot perform an activity that an

7

average person in the general population could perform, or faces significant restrictions in the 'condition, manner, or duration under which the individual can . . . perform [the] activity." Benette v. Cinemark U.S.A., Inc., 295 F. Supp.2d 243, 255 (W.D.N.Y. 2003) (quoting 29 C.F.R. § 1630.2(j)(1)(i)-(ii)).

  1. *Hearing*

The record contains little evidence regarding the nature and severity of plaintiff's alleged hearing loss. Plaintiff states that he prefers to communicate at work via e-mail because he has difficulty hearing over the phone. Plaintiff also submits a copy of an Audiological Evaluation dated May 12, 2000 (prior to his employment at Entergy), which states in summary that "due to the reduced audibility of high frequency consonant sounds" plaintiff "can be expected to experience difficulty listening, particularly when speakers do not have his visual attention, in cross conversations, and in the presence of competing noise." The record contains no other information as to the impact of plaintiff's alleged hearing loss upon his life in general. Further, plaintiff offers no evidence regarding the duration or permanency of his alleged hearing loss. In sum, the record evidence–viewed in the light most favorable to plaintiff–is insufficient to support a finding that plaintiff's impairment substantially limits his ability to hear.

  2. *Concentration and Learning*

Similarly, there is scant evidence in the record regarding the nature and severity of plaintiff's alleged inability to concentrate and learn. According to plaintiff, he had problems concentrating on the job and found it difficult to follow details. Plaintiff contends, in general fashion, that his alleged depression substantially limited his ability to concentrate, think and learn. Plaintiff also asserts that he had to drop a course at

Pace University in favor of a lower-level course[2] because he had problems concentrating.  In sum, when considered as a whole, the record evidence is insufficient to establish that plaintiff's impairment substantially limits his ability to either concentrate or learn.[3]

### 3. *Working*

"To prove a substantial limitation on the major life activity of working, a plaintiff must show that he is 'significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities.'"  Ramirez v. New York City Bd. of Educ., 481 F. Supp.2d 209, 218 (E.D.N.Y. 2007) (quoting 29 C.F.R. § 1630.2(j)(3)(i)).
"Thus, to be regarded as substantially limited in the major life activity of working, one must be regarded as precluded from more than a particular job."  Murphy v. United Parcel Serv., Inc., 527 U.S. 516, 523 (1999).

There is no evidence in the record here from which a reasonable trier of fact could conclude that plaintiff was substantially limited in his ability to perform either a class of jobs or a broad range of jobs.  At best, the record evidence establishes that plaintiff was unable to perform a *particula*r job.  Plaintiff states that, in December 2002, he told his supervisors that the "backup job was too much for [him] and [he] would like

---

[2] During his employment with Entergy, plaintiff regularly enrolled in courses at Pace University which were paid for by Entergy.  Plaintiff was awarded a Master of Science degree from Pace University on May 22, 2005.

[3] The Court notes that plaintiff also states that he has over ten years' experience in the IT field, including eight years of employment at Texaco and ten years of teaching college-level computer courses (at Dutchess and Orange County Community Colleges).

9

to concentrate on the web assignment." See Plaintiff's Affidavit, ¶ 9. In his complaint, plaintiff alleges that he advised his supervisors, in January 2003, that he "needed another position because [he] could no longer handle the pressure of [his] present position." Further, plaintiff admits that his stress or depression was either caused or exacerbated by his interaction with his supervisor. See Deposition of James Melendez, attached as Exhibit D to defendant's Statement of Material Facts, at 117-120. "Job related stress–particularly that caused by working with a particular supervisor–is not considered a disability under the ADA." Thompson v. Federal Reserve Bank of New York, No. 01 Civ. 11640, 2004 WL 330243, at *8 (S.D.N.Y. Feb. 23, 2004). Thus, plaintiff fails to demonstrate that his impairment substantially limits his major life activity of working.

In sum, the record contains no evidence from which a reasonable trier of fact could conclude that plaintiff's alleged impairments substantially limited either his ability to hear, concentrate, learn or work. Accordingly, I conclude that plaintiff has failed to demonstrate that he is an individual with a disability within the meaning of the ADA and, therefore, has not established a prima facie case of either discrimination or failure to accommodate.

## V.  CONCLUSION

For all of the foregoing reasons, I conclude, and respectfully recommend, that (1) plaintiff's motion for summary judgment should be denied and (2) defendant's motion for summary judgment should be granted and plaintiff's complaint dismissed.[4]

---

[4] Plaintiff also argues that Entergy should be compelled to produce the log records of the Fitness for Duty Officer. Plaintiff's request is untimely and, therefore, is

## VI. NOTICE

Pursuant to 28 U.S.C. §636(b)(1), as amended and Rule 72(b), the parties shall have ten (10) days from receipt of this Report to serve and file written objections to this Report and Recommendation. If copies of this report are served upon the parties by mail, the parties shall have thirteen (13) days from receipt of this Report to file and serve written objections. See Fed. R. Civ. P. 6(e). Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable Stephen C. Robinson at the United States District Court, Southern District of New York, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned at said Courthouse.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered. See Small v. Secretary of H.H.S., 892 F. 2d 5, 16 (2d Cir. 1989).

Requests for extensions of time to file objections must be made to the Honorable Stephen C. Robinson and not to the undersigned.

Dated: August ___, 2007
White Plains, New York

Respectfully Submitted,

_____
GEORGE A. YANTHIS, U.S.M.J.

---

denied. In any event, in light of the conclusions herein, plaintiff's motion is moot.